MARTHA J. SIMON (CBN 98251)
LAW OFFICE OF MARTHA J. SIMON
100 Pine St., Suite 1250
San Francisco, California 94111
(415) 434.1888 Telephone
(415) 434.1880 Facsimile
mjs@mjsimonlaw.com

Attorney for Yeva, Inc. dba
Saxe Mortgage Company

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>**GREGORY PETER MANDANIS and CHRISTINA ARTEMIS MANDANIS**<br><br>Debtors | Case No. 25-30364 HLB 7<br><br>MJS-1<br><br>Saxe Mortgage Company's Request for Confirmation that No Automatic Stay is in Effect (11 USC Section 362(c)(3)(A))<br><br>Date: July 10, 2025<br>Time: 2:00 p.m.<br><br>Judge: The Honorable Hannah Blumenstiel (via zoom or telephone conference) |

Yeva, Inc., dba Saxe Mortgage Company ("Saxe"), through its counsel, hereby requests an order confirming that there is no automatic stay in effect in the within Chapter 7 case, and that Saxe may proceed to take any action to enforce its state law rights and remedies against the Debtors and their property, notwithstanding the pending bankruptcy case.

This Request is made pursuant to Bankruptcy Code Section 362(c)(3)(A), which provides that "if a single or joint case is filed by...an individual in a case under chapter 7, 11 or 13, and if a single or joint case of the debtor was pending within the preceding one-year period but was dismissed ... the stay ... shall terminate with respect to the debtor on the 30th day after the filing of the later case.

## FACTS

1. Debtors filed the within Chapter 7 case on May 8, 2025, just two days following the May 6, 2025 Order, dismissing Chapter 11 Case No. 24-30546 DM, which Debtors had filed on July 10, 2024. A true and correct copy of the Court's Dismissal Order is attached hereto as Exhibit A.

2. A Meeting of Creditors in the Chapter 7 case was held and concluded on June 11, 2025.

3. On June 12, 2025, the Trustee Paul Mansdorf filed a Report of No Distribution.

4. As set forth in the Declaration filed and served herewith, Saxe is the servicer of notes secured by deeds of trust recorded against Debtors' real property at:

   a. 3040 Dublin Drive, South San Francisco CA 94080. Saxe's second deed of trust fully matured on September 1, 2024. Debtors have been residing in the property and have paid nothing to Saxe on account of the secured loan since February 2024. A Notice of Default was recorded October 24, 2023. The amount of $993,595.61 is due and owing to Saxe with respect to this property.

   b. 7224 Shelter Creek Lane, San Bruno CA 94066. Debtors have been renting the property. Debtors have paid nothing to Saxe on account of the secured loan since February 2024. Saxe recorded a Notice of Default on April 23, 2025, following an order for relief from stay in the Chapter 11 case. The amount of $332,416.96 is due and owing with respect to this property.

## THERE IS NO AUTOMATIC STAY IN EFFECT

5.  No automatic stay went into effect upon the filing of the within Chapter 7 case, as Debtors had been debtors in a Chapter 11 case, dismissed just two days prior to the second filing. As Debtors failed to request or obtain an extension of the automatic stay within 30 days of filing their second case in a year, there is no automatic stay in effect.

6.  In the April 29, 2025, Order Denying [Debtors'] Motion for Recondsideration and Directing Dismissal or Conversion or Dismissal (Case #24-30546 DOC#152) (*See* Exhibit B), Judge Montali thoroughly reviewed the chronology of the Chapter 11 case, Debtors' multiple attempts at Plans and Disclosure Statements, the confusion and inconsistencies presented to the Court, and the Debtors' continuing failure to pay Saxe and other secured creditors. The Court referred to the OSC issued on March 28, 2025 regarding conversion or dismissal. The Judge then gave the "Debtors a brief period of time to choose to dismiss their case or convert it to Chapter 7." *Id.* at p. 7. They chose to do neither. Instead, they filed a new bankruptcy case causing further delay.

7.  The bankruptcy process is not intended to protect debtors who perform in bad faith. In this instance, the Debtors have been taking advantage of the protection of the bankruptcy process for nearly a year. They failed to confirm a Plan in their Chapter 11 case, despite several attempts over a period of many months. Now, they have further delayed their creditors by the filing of the within case, and seek to convert their Chapter 7 case to one under Chapter 13 ( *See* Debtors' Motion to Convert Case to Chapter 13, DOC #35) to delay Saxe and other creditors even more.

### §362(c)(3)(A) TERMINATES THE STAY AS TO DEBTORS AND THEIR PROPERTY

6.  As discussed in *In re Reswick* (BAP 9th Cir. Feb. 4, 2011) and *In re Rinard* (451 B.R. 12, 19-20 (Bankr. C.D. Cal. 2011) two interpretations of Section 362(c)(3)(A) have developed. The distinctions deal

with whether the automatic stay terminates only as to the estate, or also as to the debtor and its property. The majority interpretation finds that "with respect to the debtor" means that on the 30th day after the petition date, the automatic stay terminates only with respect to the debtor and the debtor's property, but not as to property of the estate.

7. The minority interpretation finds that Section 362(c)(3)(A) terminates the automatic stay in its entirety, with respect to the debtor, the debtor's property and property of the estate. In either interpretation, the stay is deemed terminated as to the debtor and debtor's property, upon the second bankruptcy filing within a year of the first. In this case, as the Trustee has already filed a No Asset Report, there is no estate property to be distributed to creditors.

8. Section 362(c)(3)(A) was intended to address the abuse of successive filings. The 2011 BAP opinion in *In re Reswick, supra.*, p. 20, lines 13-16, authored by Judge Montali, clearly states that "The history of section 362(c)(3)(A) indicates that Congress intended it to deter second filings. For this provision to have its intended effect, it must be interpreted as terminating the automatic stay in its entirety."

9. Reviewing the *Rinard* case, *supra.*, the court in *Vitalich v. Bank of Mellon* (NDCA 569 B.R. 502 2016) found that "the cases articulating both the majority and minority views, and in particular the Ninth Circuit BAP's lengthy and well-reasoned opinion ... this Court concludes that §362(c)(3)(A) terminates the automatic stay entirely and not only with respect to the debtor and the debtor's property."

**CONCLUSION**

In view of the foregoing, Saxe requests that this Court enter an order, confirming that there is no automatic stay in effect as to the Debtors, their property or the Estate.

Respectfully submitted,

Dated: June 23, 2025

LAW OFFICE OF MARTHA J. SIMON

/s/ Martha J. Simon
MARTHA J. SIMON
Attorney for Yeva, Inc.
dba Saxe Mortgage Company

Entered on Docket
May 6, 2025
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: May 6, 2025

**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GREGORY PETER MANDANIS AND<br>CHRISTINA ARTEMIS MANDANIS,<br><br>Debtors. | ) Bankruptcy Case<br>) No. 24-30546-DM<br>)<br>) Chapter 11<br>)<br>)<br>)<br>)<br>) |

### ORDER DISMISSING CHAPTER 11 CASE

In the *Order Denying Motion for Reconsideration and Directing Dismissal or Conversion* (Dkt. 149), the court gave Debtors the option of having their Chapter 11 case dismissed rather than converted to Chapter 7. By the *Declaration of Gregory Peter Mandanis* (Dkt. 151), they timely and substantially complied with the conditions precedent to a dismissal.

Accordingly, this Chapter 11 case is DISMISSED.

**\*\*END OF ORDER\*\***



EXHIBIT A

Case: 24-30546   Doc# 152   Filed: 05/06/25   Entered: 05/06/25 09:43:31   Page 1 of 2
Case: 25-30364   Doc# 43   Filed: 06/23/25   Entered: 06/23/25 16:59:02   Page 6 of 17

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | Gregory Peter Mandanis |
| 3 | 3040 Dublin Drive |
|   | South San Francisco, CA 94080 |
| 4 | |
| 5 | Christina Artemis Mandanis |
|   | 3040 Dublin Drive |
| 6 | South San Francisco, CA 94080 |

-2-



Signed and Filed: April 29, 2025

**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GREGORY PETER MANDANIS AND<br>CHRISTINA ARTEMIS MANDANIS,<br><br>Debtors. | ) Bankruptcy Case<br>) No. 24-30546-DM<br>)<br>) Chapter 11<br>)<br>) HEARING HELD<br>) Date: April 25, 2025<br>) Time: 11:00 a.m.<br>) Location: Via Zoom |

### ORDER DENYING MOTION FOR RECONSIDERATION AND DIRECTING DISMISSAL OR CONVERSION

Debtors Gregory Peter Mandanis and Christina Artemis Mandanis ("Debtors"), representing themselves, filed a petition under Subchapter V of Chapter 11 on July 19, 2024.[1] A few days later, on July 31, 2024, they amended their petition so that the case would proceed as a traditional Chapter 11, and not under Subchapter V.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

EXHIBIT B

They retained counsel on October 4, 2024, and thereafter filed a series of proposed Combined Plans of Reorganization and Disclosure Statements, as follows:

- Dkt. 106    January 15, 2025
- Dkt. 115    March 1, 2025
- Dkt. 120    March 20, 2025
- Dkt. 124    March 27, 2025
- Dkt. 129    April 10, 2025
- Dkt. 139    April 17, 2025

For purposes of this discussion, the April 17 version will be referred to as the "Plan".

Relevant to the issues dealt with here are the following documents:

- Order to Show Cause Why This Case Should Not be Converted or Dismissed (Dkt. 126)
- Response to Order to Show Cause Why This Case Should Not be Dismissed or Converted (Dkt. 130)
- Motion for Reconsideration (Dkt. 135)
- Chapter 11 Monthly Operating Report for Month Ending 3/31/25 (Dkt. 146)

Debtors have a relatively small and inactive number of unsecured creditors, as evidenced in Classes 2(b) and 2(c) of the Plan.

Debtors are over-leveraged on five pieces of real property, one of which, Santa Rosa rental property, has recently been foreclosed. The remaining properties are: 1) Debtors' principal residence in South San Francisco, California ("Residence"); 2) Foster City rental property ("Foster City"); 3) El Sobrante

-2-

rental property ("El Sobrante"); and 4) San Bruno rental property ("San Bruno").

The first position lenders secured by the Residence and by El Sobrante have not been active in the bankruptcy. They have not sought relief from the automatic stay and Debtors do not report any arrearages owed to them.

The major problems are significant amounts owed to Saxe Mortgage Company ("Saxe"), holding a second trust deed on the Residence and a first trust deed on San Bruno. It has foreclosed its second deed of trust on the Santa Rosa property as mentioned above.

On Foster City, there is a substantial arrearage owed to Velocity Commercial Capital Loan Trust ("Velocity") and a significant arrearage to City Homes East Homeowner's Association.

There are also arrearages owed to Westwood Oaks Condominium Association on El Sobrante and Shelter Creek Homeowner's Association on San Bruno.

The Plan concedes that the three rental properties all have negative cash flows and can only be salvaged if Gregory Mandanis is able to maintain two significant income producing jobs over a span of five years to service existing debts and eliminate the arrearages summarized above.

As to the Residence, Debtors propose to pay just under $10,000 per month in regular mortgage payments plus an additional $2,300 a month to Saxe to pay down arrears. There appears to be a modest equity in the Residence.

-3-

At a hearing on April 25, 2025, the court and counsel discussed the most recent MOR. That document shows, without narrative or explanation, that Debtors have collected rents received from their three rental properties and at least a small amount from the now foreclosed Santa Rosa property. The MOR does show that Debtors are maintaining eight separate bank accounts, but the face of the MOR does not readily show which account is associated with a specific rental property, nor is there any indication that specific accountings or information concerning any collected rents were held for the benefit of, or reported to, the affected secured creditors.[2] At no time did the Debtors move to use cash collateral subject to the liens of Saxe, Velocity, or the respective homeowner's associations. While there is no need to obtain permission to use cash collateral if it is simply being accumulated, neither Debtors nor their counsel appears to have made any attempt to inform the court or the secured creditors of that segregated cash.

Nor have Debtors ever proposed to make periodic adequate protection or principal payments to these secured creditors (Saxe, Velocity and three homeowner's associations) but have held that cash, ostensibly until they have a confirmed plan. While the court appreciates that Debtors claim that they have been collecting rents because at least one creditor refused to accept payments post-bankruptcy, the fact remains that Debtors have been accumulating rents while those very creditors have

---

[2] Section 363(c)(4) provides: "Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control."

-4-

complained about lack of payments in various motions for relief from stay.

Another issue that came to light in the recent hearing has to do with a discrepancy in the Plan and an inadequate attempt by Debtors and their counsel to explain that discrepancy. On page 22 of the Plan, Debtors report $56,000 of cash, but subject to what they call a "Secured Claim (Foster City Rental Farmer's Insurance)" of $36,000, leaving $20,000 of net proceeds for a hypothetical Chapter 7 case. After further discussion at the hearing, it appears that the Foster City property suffered water damage post-petition and while insurance proceeds were received, there remain unpaid suppliers (who have repaired the damage and may have post-petition mechanics' lien rights). Those suppliers are listed on page 8 of the Plan under General Unsecured Claims of over $50,000, identified as "disputed/post-bankruptcy claim" not entitled to be paid anything. This confusing entry is inconsistent with the facts as described and leave the court incapable of analyzing the rights of the affected creditors and the obligations of the Debtors or the impact of this situation on the prospect for reorganization.[3]

Also on page 22 of the Plan is a secured claim in the amount of $28,065.18 but no where in other portions of the Plan is that secured creditor identified, classified or dealt with.

Finally, while Mr. Mandanis' efforts to rehabilitate Debtors' financial situation and maintain all of his properties

---

[3] Related to this problem is the curious entry on the MOR revealing that Debtors may have filed suit against the City of Foster City post-petition. That lawsuit is not mentioned in the Plan.

Case: 24-30546   Doc# 149   Filed: 04/29/25   Entered: 04/29/25 17:44:23   Page 5 of 10
Case: 25-30364   Doc# 43   Filed: 06/23/25   Entered: 06/23/25 16:59:02   Page 12 of 17

is commendable, he rests much of their prospects for feasibility on a recently negotiated arrangement to provide automation support for a local dentist. That work will involve the supervision of installation of various hardware and software components over two or three months, followed by what Mr. Mandanis calls an ongoing support administration commitment that he states will generate income of $12,800 per month. Although he projects that the work and income will continue through the end of 2026, the arrangement is described as temporary and hourly, which indicates that the income may not be as consistently high as projected.

While the court does not question his primary source of employment income from Disney Media & Entertainment, the projected consulting income and rental income from cash-negative investment properties, is not sufficient to support a finding of feasibility or likelihood that the reorganization will succeed.

The bankruptcy court may dismiss or convert a case under Section 1112(b) for cause unless the court determines that a trustee or examiner is in the best interest of the estate. Here, a trustee would not be appropriate as so much depends on Mr. Mandanis' ongoing ability to earn income. A trustee would likely only abandon or attempt to liquidate real property, resulting in outcomes consistent with a Chapter 7 liquidation.

Section 1112(b)(4) lists several situations that constitute "cause," any one of which alone would be dispositive here. They are subparagraph (A) ("substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation"); subparagraph (B) ("gross

-6-

mismanagement of the estate"); and subparagraph (J) ("failure to file a disclosure statement, or to file or confirm a plan within a time fixed by this title or by order of the court").

The ongoing losses are substantial, and they alone are reason enough to end the Chapter 11 reorganization effort. The ongoing problems in the administration of the estate may be partly attributable to the understandable errors of the lay debtors, and partly attributable to the inexperience of their counsel, but the estate is not being managed in a manner expected of the fiduciaries that the Debtors are. Finally, although the court did not fix a firm date for filing a disclosure statement and plan, Debtors filed six times, the two being preceded by the Order to Show Cause with conversion or dismissal clear possibilities.

When the court issued the Order to Show Cause on March 28, 2025, it had in mind either conversion to Chapter 7 or dismissal. Since then, it gave Debtors the option to dismiss if they preferred; if they did not act, the case would be converted. Based upon the Motion to Reconsider and the court's willingness to keep options opened to Debtors, it will not precipitously convert this case to Chapter 7. While it concludes that reorganization is not feasible and that the Chapter 11 must be terminated, it will once again give Debtors a brief period to choose to dismiss their case or convert it to Chapter 7.

However, before this case may be dismissed, and no later than **Monday, May 5, 2025**, Debtors must:

-7-

Case: 24-30546   Doc# 149   Filed: 04/29/25   Entered: 04/29/25 17:44:23   Page 7 of 10
Case: 25-30364   Doc# 43   Filed: 06/23/25   Entered: 06/23/25 16:59:02   Page 14 of 17

Prepare a list of the three rental properties identifying the location, the name and address of the tenant, the rental terms and monthly rent being charged and being collected, and the amount of rents currently segregated. If the rents have been commingled, and are not segregated, conversion to Chapter 7 will be the only result and dismissal denied.

Transmit to Saxe and Shelter Creek Homeowner's Association the information referred to above regarding San Bruno, plus remit to Saxe the collected rents for that property.

Transmit to Carrington Mortgage Services and Westwood Oaks Condominium Association, the same information regarding El Sobrante, plus remit to Carrington the rents collected rents for that property.

Transmit to Velocity and City Homes East Homeowner's Association, the same information regarding Foster City, plus remit to Velocity the rents collected rents for that property.

Transmit to Saxe any segregated rents received for the Santa Rosa property prior to the foreclosure.

If Debtors choose to dismiss their case and comply with the foregoing, they may submit a request for dismissal, accompanied by a declaration of the Debtors that the foregoing obligations have been fulfilled, no later than **5:00 PM on May 5, 2025.** Upon receipt of that request, the court will promptly dismiss the case.

If they do not transmit the segregated rents and the accounting information by that date, the court will enter an order converting this case to Chapter 7 at the commencement of

-8-

business on May 6, 2025, or sooner if Debtors affirmative elect that option.[4]

**\*\*END OF ORDER\*\***

---

[4] On a final note, early in this case the court observed the need for the Debtors to rid themselves of the most pressing problems (the negative cash-flow rentals) to save what they could. While the reorganization they may have envisioned may no longer be a reality, the court urges them to take the suggestion to heart and consider approaching Saxe to refinance or obtain a reasonable term of forbearance from it to consider acceptable alternatives. While the court cannot compel Saxe to do anything, it can encourage Debtors to try.

-9-

Case: 24-30546    Doc# 149    Filed: 04/29/25    Entered: 04/29/25 17:44:23    Page 9 of 10
Case: 25-30364    Doc# 43    Filed: 06/23/25    Entered: 06/23/25 16:59:02    Page 16 of 17

COURT SERVICE LIST

Gregory Peter Mandanis
3040 Dublin Drive
South San Francisco, CA 94080

Christina Artemis Mandanis
3040 Dublin Drive
South San Francisco, CA 94080

-10-

Case: 24-30546    Doc# 149    Filed: 04/29/25    Entered: 04/29/25 17:44:23    Page 10 of 10
Case: 25-30364    Doc# 43    Filed: 06/23/25    Entered: 06/23/25 16:59:02    Page 17 of 17